## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

CARL R. GILBERT, II,
and SHARON GILBERT,

        Plaintiffs,

      v.                                      Case No.: 3:08-cv-51-RV/EMT

HARRY R. MCNESBY, Sheriff
of Escambia County, Florida;
CHARLIE WALKER, Code
Enforcement, Supervisor, Escambia
Board of County Commissioners;
SOTIRIOS THAGOURAS, Code
Enforcement Officer, Escambia Board
of County Commissioners,

        Defendants.
_____/

## ORDER

Now pending are three motions to dismiss filed by defendants Charlie Walker
and Sotirios Thagouras (docs. 18, 21, 22).

## I.    BACKGROUND

The plaintiffs, Carl R. Gilbert and Sharon Gilbert, are husband and wife. The
defendants are: Harry R. McNesby was Sheriff of Escambia County; Charlie Walker
was a Code Enforcement Supervisor and Deputy Sheriff; and Sotirios Thagouras was a
Code Enforcement Officer and Deputy Sheriff. The following facts are taken from the
complaint, and they are assumed true for purposes of this order.

In January 2005, Mr. Gilbert became interested in relocating his business,
Southland Site Contractors, Inc., to 2621 Longleaf Drive, Pensacola, Escambia County.
After verifying that zoning was proper for the business, he purchased the property.
Several months later he registered C&D Containers ("C&D") as a d/b/a for Southland
Site Contractors and secured an occupational license for C&D.

On December 15, 2005, Thagouras arrived at the property and informed Mr. Gilbert that he was investigating a possible zoning and licensing violation. Five days later, Thagouras returned and issued a cease and desist order and a notice of violation to the business, which alleged (i) a zoning violation for Escambia County and (ii) the failure to have a franchise collector's permit for solid waste in violation of Escambia County Ordinances. Mr. Gilbert examined the applicable ordinance and concluded that it only applied to the collection of residential garbage (which did not apply to C&D). Nevertheless, in an abundance of caution, Mr. Gilbert contacted the Escambia County Department of Solid Waste on December 29th and applied for a solid waste permit. He was told that he could continue conducting business while the permit was being processed, which could take up to three months.

On January 5, 2006, a C&D employee arrived at the Saufley Landfill to dump demolition debris and was informed that C&D could not dump at the landfill. John Englund informed Mr. Gilbert that Thagouras had threatened to cause problems for the Saufley Landfill and, furthermore, Thagouras asserted that C&D was operating illegally and without insurance.[1] Later that same day, Mr. Gilbert consulted with legal counsel and was informed that C&D was properly zoned and that it did not need a solid waste permit. Mr. Gilbert subsequently explained this to Thagouras, who said in response that he wanted to see C&D put out of business.

The next day, January 6th, Mr. Gilbert made several unsuccessful attempts to contact Walker about Thagouras's conduct. He then made a complaint to Commissioner Mike Whitehead of the Escambia Board of County Commissioners regarding Thagouras's conduct in stopping C&D from dumping debris at a private landfill. Whitehead confirmed after speaking with the Escambia County Attorney that Mr. Gilbert was correct and that Thagouras had no authority to prevent him from dumping demolition debris at a private landfill. Later that same day, Walker contacted Mr. Gilbert

---

[1] The complaint does not explain who John Englund is, but it appears that he worked for, or perhaps owned, the Saufley Landfill.

and told him that he, Walker, would allow him to dump eight containers of construction debris at Saufley Landfill. Mr. Gilbert advised Walker that he, Walker, did not have any authority to regulate his dumping at a private landfill, in response to which Walker said that he could put C&D out of business. Walker also told Mr. Gilbert that he would "deal with" him in court. At some point during the day, Thagouras secured an arrest warrant alleging (i) two violations of "Obstruction of Right of Way;" (ii) one violation of "Franchise Haulers Agreement;" (iii) one violation of "R-5 Zoning;" and (iv) one violation of "Setback Requirement." The complaint alleges that these criminal charges were the result of an agreement between Walker and Thagouras to engage in selective prosecution of Mr. Gilbert.

On January 7th, a C&D employee returned to the Saufley Landfill to dispose of construction debris, but he was turned away at the front gate. As a result, Mr. Gilbert lost a demolition contract. Two days later, Thagouras contacted Mr. Gilbert and requested a meeting. Mr. Gilbert told him that he was at the office every morning between 7:30 and 8:00 a.m. with his two children because the children walked across the street to school with their friends. The next morning, January 10th, Thagouras arrived at the office with another deputy sheriff and several code enforcement officers. The officers arrested him in front of his children on the arrest warrant that Thagouras had previously secured.

On February 10th, Thagouras obtained a second arrest warrant that alleged the same facts as the earlier one. He was arrested on this second warrant on February 28th. The complaint alleges that the second warrant and subsequent arrest were designed to harass and humiliate Mr. Gilbert. On March 8th, the plaintiffs and their attorneys met with Walker, Frank Breaux (from the Escambia County Planning and Zoning Office), and an attorney from the Escambia County Attorney's Office to discuss the pending criminal charges. During the March 8th meeting, Walker and the Escambia County Attorney admitted that there was no violation of the "Franchise Haulers Agreement," the "R-5 Zoning" ordinance, or the "Setback Requirement," thus leaving the "Obstruction of Right of Way" as the only charge. However, Walker and Thagouras did not contact the State

Attorney's Office to notify that office that there was no factual basis to proceed with three of the four violations.

On June 8th, Mr. Gilbert was found not guilty of all charges contained in the two arrest warrants. The very next day, Thagouras applied for and received a third arrest warrant that alleged the same violations, facts, and dates for which Mr. Gilbert had just been acquitted. He was later arrested at his home in front of his children and neighbors --- by members of the Santa Rosa County Sheriff's Office SWAT team. Several months later, the State Attorney's Office announced that it was dismissing the prosecution initiated by the third arrest warrant obtained by Thagouras because Mr. Gilbert had already been found not guilty of those charges.

Invoking jurisdiction pursuant to Title 42, United States Code, Section 1983, *inter alia*, the plaintiffs filed a seven-count complaint against the defendants in state court. The first three counts are each labeled a "Civil Rights Claim." Essentially, Mr. Gilbert takes each arrest warrant and makes the same allegations regarding the actions of Thagouras and Walker. In Counts I and II, Thagouras is alleged to have applied for the first two arrest warrants without probable cause, as demonstrated by the March 8th meeting. This allegedly caused him to suffer violations of his constitutional rights under the Fourth, Fifth and Fourteenth Amendments. In Count III, he alleges that Thagouras was motivated by malice and evil intent because of the finding made by the county court which exonerated him of all charges, which also violated the Fourth, Fifth and Fourteenth Amendments. In all three counts, Walker is alleged to have had the responsibility to supervise and train Thagouras and he did not do so, which caused him to suffer violations of his rights under the Fourth, Fifth and Fourteenth Amendments. The complaint also alleges that Walker was himself personally involved in the actions taken against Mr. Gilbert. *See, e.g.,* Complaint at ¶¶28, 33, 39, 40.

In Counts IV-VI, Mr. Gilbert raises a state law claim of malicious prosecution for each arrest warrant on the grounds that Thagouras submitted an affidavit based upon inaccurate, misleading, and false information in reckless disregard of the truth. In Count VII, Ms. Gilbert advances a state law claim for loss of consortium.

The litigation was removed to this court on the basis of federal question jurisdiction, and defendants Walker and Thagouras now move to dismiss.[2]

## II.    STANDARD OF REVIEW

In deciding the defendants' motions, I am confined to the four corners of the complaint (and any attachments), and I must take the factual claims therein as true and view them in the light most favorable to the plaintiffs. *See, e.g., Erickson v. Pardus,* --- U.S. ---, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007); *Bickley v. Caremark RX, Inc.,* 461 F.3d 1325, 1329 n.7 (11th Cir. 2006); *Murphy v. Federal Deposit Ins. Corp.,* 208 F.3d 959, 962 (11th Cir. 2000). The Federal Rules of Civil Procedure do not require the plaintiffs to set out in detail the facts upon which they base their claim; rather, Rule 8(a)(2) only requires a "short and plain statement" showing that the pleader is entitled to relief. Nevertheless, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *accord Watts v. Florida Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007). "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *See Watts, supra,* 495 F.3d at 1295 (quoting *Twombly,* 127 S. Ct. at 1965). This rule does not "impose a probability requirement at the pleading stage." *Twombly,* 127 S.Ct. at 1965. It is sufficient if the complaint succeeds in "'identifying facts that are suggestive enough to render [the element] plausible.'" *Watts, supra,* 495 F.3d at 1296 (quoting *Twombly,* 127 S. Ct. at 1965).

## III.    DISCUSSION

Defendants Walker and Thagouras raise several grounds in support of their motions to dismiss, only one of which warrants discussion. Specifically, the defendants contend that the plaintiffs have failed to adequately state a claim for equal protection

---

[2] Defendant McNesby answered the complaint and has not filed a motion to dismiss.

under the Fifth and Fourteenth Amendments. To state a claim for selective enforcement under the equal protection clause, a plaintiff must show that: (1) he was treated differently and less favorably than similarly situated individuals, and (2) the defendants unequally applied an ordinance or code provision for the specific purpose of intentionally discriminating against him. *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006); *see also GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998). Therefore, to establish an equal protection violation, the plaintiff must allege in his complaint that a similarly situated individual was treated better. *See generally Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189 (11th Cir. 2007). "'The reason that there is a 'similarly situated' requirement in the first place is that at their heart, equal protection claims . . . are basically claims of discrimination.' To maintain this focus on discrimination and to avoid constitutionalizing every state regulatory dispute, we are obliged to apply the 'similarly situated' requirement with vigor." *Id.* at 1207 (citation omitted).

The plaintiffs do not allege anywhere in their complaint that there were similarly situated individuals or businesses that were treated differently. Therefore, the equal protection claim must fail. *See Griffin Indus., supra,* 496 F.3d at 1202-08; *see also, e.g., GJR Invs., supra,* 132 F.3d at 1367-68 (equal protection claim dismissed where the complaint failed to "present a single instance in which a similarly situated" person was given more favorable treatment; explaining that "a complaint must attempt to show in some fashion that . . . 'other' [individuals] were situated similarly to the plaintiff"); *Roy v. Fulton County School Dist.,* 288 Fed. Appx. 686, 688 (11th Cir. 2008) (equal protection claim dismissed "because nowhere in the complaint do the Roys allege that Mark was similarly situated with any other parties," and, consequently, the complaint failed to "establish[] the necessary elements of an equal protection violation").

Otherwise, the plaintiffs have alleged facts sufficient to state a claim.

**IV.    CONCLUSION**

For the reasons stated above, the defendants' motions to dismiss (docs. 18, 21, 22) are DENIED, except to the extent that the complaint alleges a violation of equal protection, which claim must be, and is, DISMISSED.

DONE and ORDERED this 2nd day of January, 2009.

/s/ *Roger Vinson*
ROGER VINSON
Senior United States District Judge